UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
DALE P. HANDY,                                          :
                                                        :
                            Plaintiff,                  :
        -against-                                       :
                                                        :         14-cv-01428 (NSR)
                                                        :         OPINION & ORDER
THE CITY OF NEW ROCHELLE, THE CITY OF :
NEW ROCHELLE SECTION 8 VOUCHER                          :
PROGRAM, DEBORAH PRITCHETT,                             :
DEBORAH LANDRY, and JASON LORD,                         :
                                                        :
                            Defendants.                 :
---------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

       Plaintiff Dale P. Handy ("Plaintiff") commenced this action against defendants The City

of New Rochelle (the "City"), Jason Lord ("Lord"), Deborah Landry ("Landry") and Deborah

Pritchett ("Pritchett") (collectively, "Defendants") for violations of her rights under the Fair

Housing Act, 42 U.S.C. § 3601 et seq, the Fourth Amendment, and the Fourteenth Amendment.

Before the Court is Defendants' Motion for Summary Judgment. For the following reasons,

Defendants' motion is GRANTED.

## PLAINTIFF'S FAILURE TO FILE A RULE 56.1 STATEMENT

       Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern

Districts of New York (the "Local Rules") requires a party moving for summary judgment to

submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as

to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a).

Generally, the movant's asserted facts are deemed to be admitted unless specifically controverted

by the statement served by the opposing party. Local Rule 56.1(c). Though *pro se* status "does

not exempt a party from compliance with relevant rules of procedural and substantive law,"

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)), the Court has "broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co*., 258 F.3d 62, 73 (2d Cir. 2001). "[W]hile a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." *Id.* (internal quotation marks and citations omitted). *See also Vann v. Fischer,* No. 11 CIV. 1958 KPF, 2014 WL 4188077, at *6 (S.D.N.Y. Aug. 25, 2014), *reconsideration denied*, No. 11 CIV. 1958 KPF, 2015 WL 105792 (S.D.N.Y. Jan. 7, 2015).

In the instant case, Plaintiff has failed to file a Local Rule 56.1 statement.[1] However, Plaintiff submits a number of exhibits to support her arguments.[2] Accordingly, despite Plaintiff's failure to submit a statement pursuant to Local Rule 56.1, in light of Plaintiff's *pro se* status, the Court will exercise its discretion to review the record independently in consideration of Plaintiff's claims.[3] After conducting this review, the Court has confirmed that the following facts are undisputed except where noted.

---

[1] Plaintiff additionally alleges that discovery has not been completed. Pursuant to Federal Rule of Procedure 56, the Court may deny the motion or allow additional time for discovery if Plaintiff "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). However, Plaintiff has not submitted an affidavit or declaration "includ[ing] the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994) (discussing prior version of the rule) (citing *Hudson River Sloop Clearwater, Inc. v. Department of Navy*, 891 F.2d 414, 422 (2d Cir.1989); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp*., 769 F.2d 919, 926 (2d Cir. 1985).) Therefore, the Court cannot afford any relief to Plaintiff based on this allegation alone.

[2] Plaintiff submitted some exhibits directly to the Court. It is unclear whether these exhibits were served on Plaintiff's adversary, and the exhibits were not uploaded to ECF. However, it appears that these exhibits were presented at the informal hearing and therefore Defendants are aware of their existence. The Court considers these exhibits and in doing so affords the *pro se* Plaintiff significant latitude, however, because consideration of all of the evidence results in a judgment for—and therefore does not prejudice—Defendants.

[3] Plaintiff asserts a number of facts in her affidavit/memorandum that are not supported by any materials in the record. Under Federal Rule of Civil Procedure 56(c), a court may not consider statements in legal memoranda as part of the factual record on summary judgment. *See* Fed. R. Civ. P. 56(c)(1). In determining whether a question of material fact exists, the Court will therefore not consider any unsupported factual assertions. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) (holding that "Rule 56(e) [] requires the nonmoving party to go beyond the

## FACTUAL BACKGROUND

Plaintiff has been receiving assisted living benefits from the City of New Rochelle Section 8 Program since at least 2010. (Defendants' Statement of Material Facts Pursuant to Local Rule 56.1 ("Defs.' 56.1"), ECF No. 33, ¶ 1.) In April of 2010, Plaintiff submitted a request that she be moved from her one-bedroom apartment into a two-bedroom, so that her elderly, disabled mother, Eddrew Guest, who was having medical issues could live with her. (*Id.* ¶ 1.) In the fall of 2010, Plaintiff executed a new lease agreement for a two-bedroom apartment in New Rochelle, NY, and signed the accompanying Section 8 vouchers to acquire the assisted living benefits. (*Id.* ¶ 2.) The lease and vouchers signed by Plaintiff require Plaintiff to "promptly notify the PHA (the Public Housing Agency) in writing when the family is away from the unit for an extended period of time in accordance with PHA policies" and to "notify the PHA and the owner before the family moves out of the unit." (*Id.* ¶ 3; *see also* Defs.' Exhibits B-D, ECF No. 33.) The Housing Assistance Program contract requires annual reexamination of personal and financial information to certify an applicant for benefits. (*See* Housing Assistance Payment Contract Amendment Notice, Attachment to ECF No. 43, at HB000093.) As early as 2011, Plaintiff indicated on the recertification forms that she was disabled and deducted medical expenses for her disability from her total income. (*Id.* at HB000095-98.) According to Plaintiff's doctors' notes, she has a mental disability in that she suffers from Major Depressive Disorder and Recurrent, Moderate and Panic Disorder. (Defs.' Exhibit R.)

---

pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial") (internal citations and quotation marks omitted); *see also D'Alessandro v. Woodloch Pines, Inc.*, No. 99 Civ. 1472(SAS), 2000 WL 28166, at *1 (S.D.N.Y. Jan. 14, 2000) ("If the non-moving party brings forward 'any evidence ... from any source from which a reasonable inference could be drawn in favor of the non-moving party, summary judgment is improper'") (quoting *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)).

In November 2012, Eddrew Guest—Plaintiff's mother—passed away. (Defs.' 56.1 ¶ 4.) When Plaintiff informed Section 8 of her mother's passing, a specialist informed her that she would need to move into a one-bedroom apartment and that they would wait to perform her yearly recertification of benefits until Plaintiff found a one-bedroom apartment. (Defs.' Exhibit I at 30.) Plaintiff claims that she found a one-bedroom apartment in the same building and contacted Defendant Landry at the Section 8 office to inform her of such, at which point Defendant Landry told Plaintiff that the office has a new executive director who is trying to "move people out of the one-bedroom apartments into studio apartments." (*Id.* at 34.)

On March 25, 2013, the Section 8 office notified Plaintiff that she should come into the office for an interim recertification of her benefits. (Defs.' 56.1 ¶ 6.) After several attempts to reach Plaintiff through the mail and in person, Defendant Pritchett, the Section 8 Director, reviewed Plaintiff's file suspecting that she was not living at the apartment. (*Id.* ¶ 7; Defs.' Exhibit O at 11-12.) Through their review of the file, the Section 8 office noticed that (1) Plaintiff's address was listed on Mrs. Guest's death certificated as an address in Manhattan (an address that belonged to her brother),[4] rather than the apartment in New Rochelle; and (2) Plaintiff's Consolidated Edison ("ConEd") bills for electric and gas provided for the apartment showed virtually no electric or gas usage at the apartment for the years 2011 and 2012.  (Defs.' 56.1 ¶¶ 8-9; Defs.' Exhibit G; Defs.' Exhibit Q at 428-29.) When Plaintiff could still not be reached, Defendant Lord—a Section 8 inspector—was sent to Plaintiff's apartment twice—on June 7 and 10, 2013—but Plaintiff was not home. (Defs.' 56.1 ¶ 10.). While at the apartment, Defendant Lord noted that the buzzer system did not indicate Plaintiff's name. (*Id.* ¶ 11; Defs.' Exhibit K.) Defendant Lord did not contact Plaintiff by phone or leave notice at her apartment

---

[4] Plaintiff alleges that the listed address on the death certificate is a mistake. (Affidavit of Dale P. Handy in Opposition to the Motion for Summary Judgment, ECF No. 43, at 2.)

that he had visited and was attempting to locate her. (Defs.' Exhibit I at 77.) On June 11, 2013,

still unable to reach Plaintiff, the Section 8 office drafted another letter requesting that Plaintiff

schedule a meeting. (Defs.' 56.1 ¶ 13.) On June 13, Plaintiff went to the Section 8 office. (*Id.* ¶

14.) Defendant Pritchett accused Plaintiff of not living in the apartment, and Plaintiff responded

by saying, "I have nothing to hide. You can come to my house." (Defs.' Exhibit I at 41.)

Some time later that day, after walking home on her own, Plaintiff met Defendants

Pritchett and Lord at her apartment, and Plaintiff let them into her apartment to perform an

inspection. (Defs.' Exhibit I at 41, 45.) The parties disagree as to what the inspection showed

regarding the contents of Plaintiff's apartment. Defendants contend—and submit photographs

that show—that (1) there was no food observed in the fridge, freezer or cabinets; (2) no

silverware, plates, or pots were in the kitchen; (3) the medicine cabinet was empty; (4) the linen

closet had no linens, towels, wash cloths, sheets or blankets; (5) no clothes were being stored in

the closet; and (6) there was a large area of interior ceiling disrepair due to an upper-level leak.

(Defs.' Exhibits J-K.) However, Plaintiff submits photographs to the Court that show, among

other things: (1) a furnished apartment; (2) boxes of items in a closet; (3) toiletries on the sink in

the bathroom; (4) pots, pans, and dishes in the kitchen; (5) framed photographs; and (6) a fully

made-up bed. (Pl.'s Exhibit 2D.) Plaintiff additionally alleges that neither defendant asked why

she did not have items in her closets or drawers; the drawers were empty, according to Plaintiff,

because she was packing in anticipation of moving into a one-bedroom apartment. (Defs.'

Exhibit I at 77.)

Following the inspection, on June 13, 2013, the City of New Rochelle Section 8 Program

sent Plaintiff a letter explaining that due to her violation of the Section 8 Family Obligations, it

will no longer be providing her assistance for her apartment. (Defs.' Exhibit L.) On June 19,

2013, Plaintiff sent Section 8 a letter disagreeing with its decision and requesting a formal fair hearing of the matter. (Defs.' Exhibit M.) Around August of 2013, a formal hearing was held in which Plaintiff was represented by counsel from the Legal Services of the Hudson Valley. (Defs.' 56.1 ¶¶ 27-28.) The hearing was presided over by Barbara Acosta, a retired Administrator of the Westchester County Section 8 Program, and both parties presented testimony and exhibits. (*Id.* ¶¶ 27, 29.) At the hearing, Plaintiff provided documentation that she was being treated for mental illness. (*Id.* ¶ 30.) After consideration of all of the evidence, the Hearing Officer—Acosta—issued a written decision affirming the termination of Section 8 benefits. (Defs.' Exhibit S.) The decision explains that the Hearing Officer took into account, among other things, the testimony of Defendants Pritchett and Lord, Plaintiff's testimony, the fact that Plaintiff's address on Mrs. Guest's death certificate was not the New Rochelle address, both sets of photographs, and the ConEd usage in deciding, by a preponderance of the evidence, that Plaintiff did not live at the New Rochelle apartment. (*Id.*)

## STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to

the non-moving party to identify "specific facts showing that there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation and quotation marks

omitted). A genuine dispute of material fact exists when "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Id.* at 248; *accord Benn v. Kissane*, 510 F.

App'x 34, 36 (2d Cir. 2013) (summary order). Courts must "constru[e] the evidence in the light

most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor."

*Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal

quotation marks omitted). In reviewing the record, "the judge's function is not himself to weigh

the evidence and determine the truth of the matter," nor is it to determine a witness's credibility.

*Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of

determining whether there is the need for a trial." *Id.* at 250.

      Summary judgment should be granted when a party "fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The party asserting that a fact is

genuinely disputed must support their assertion by "citing to particular parts of materials in the

record" or "showing that the materials cited do not establish the absence . . . of a genuine

dispute." Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with

conclusions, are insufficient to defeat a properly supported motion for summary judgment."

*Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). The nonmoving party "may not

rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607

F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted). Moreover, "[a non-

moving party's] self-serving statement, without direct or circumstantial evidence to support the

charge, is insufficient to defeat a motion for summary judgment." *Fincher v. Depository Trust &*

*Clearing Corp.*, No. 06 Cv. 9959 (WHP), 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008)

*aff'd*, 604 F.3d 712 (2d Cir. 2010) (citing *Gonzales v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d

342, 353 (S.D.N.Y. 2003)).

## DISCUSSION

Defendants move for summary judgment on the Fair Housing Act and Fourth

Amendment claims explicitly raised in Plaintiff's complaint. However, the Court finds that

Plaintiff has also clearly alleged facts to support—and written motion papers to argue against

summary judgment on—a due process claim. Given that the Court should read the complaint "to

raise the strongest arguments [it] suggests" and "make reasonable allowances to protect *pro se*

litigants from inadvertent forfeiture of important rights because of their lack of legal training," it

should not matter that Plaintiff does not explicitly bring a cause of action for a violation of her

due process rights. *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006)

(collecting authority) (internal quotation marks and citations omitted). More specifically, a

plaintiff must only allege sufficient facts to make out an actionable claim but is not required to

articulate the appropriate legal theory under which relief may be granted. *See, e.g., Soto v.

Walke*r, 44 F.3d 169, 170 (2d Cir. 1995) (finding that district court erred by interpreting a *pro se*

complaint as based solely on the theory of relief raised most directly by plaintiff's allegations,

where "the facts [plaintiff] alleged clearly describe an actionable due process violation," and

reversing dismissal of complaint). Accordingly, the Court will consider the due process claim, as

well as the Fair Housing Act and Fourth Amendment claims.[5]

### I.     Due Process

In *Goldberg v. Kelly*, the Supreme Court held that due process requires a defendant to

---

[5] The Court additionally finds that Defendants Reply Memorandum (ECF No. 45) sufficiently addresses the due process claim.

meet certain procedural safeguards before terminating a recipient's public housing assistance, including: (1) timely and adequate notice stating the reason for termination, (2) an opportunity to appear at a pre-termination hearing, to present evidence, and to confront and cross-examine witnesses, (3) a right to representation by counsel during the hearing, (4) a post-hearing decision that rests "solely on the legal rules and evidence adduced at the hearing," which is demonstrated by a statement of the decisionmaker's "reasons for his determination" and an indication of "the evidence he relied on," and (5) an impartial decisionmaker. *Goldberg v. Kelly,* 397 U.S. 254, 266-71 (1970); *see also Falkowski v. North Folk Housing Alliance, Inc*., 08–CV–2550, 2009 WL 3174029 (E.D.N.Y. Sep. 30, 2009).

In the instant case, the fourth *Goldberg* element is at issue. Plaintiff asserts that the evidence adduced at the hearing was insufficient to permit Defendants to establish, by a preponderance of the evidence, that Plaintiff was not living in the apartment.

The Second Circuit "has not yet articulated a clear standard for the level of deference a district court must show an agency's factfinding when terminating public housing assistance." *Boykins v. Cmty. Dev. Corp. of Long Island*, No. 10-CV-3788 JS ARL, 2011 WL 1059183, at *5 (E.D.N.Y. Mar. 21, 2011). However, the Supreme Court has held that in actions under section 1983, "federal courts must give [an] agency's factfinding the same preclusive effects to which it would be entitled in the State's courts." *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986). Accordingly, this Court's review is limited to whether the hearing officer's conclusions are supported by substantial evidence. *Cappiello v. Mechanicville Hous. Auth*., 80 A.D.3d 1139, 1139-40, 915 N.Y.S.2d 753, 754 (3d Dep't 2011) (citing *Matter of Graceffo v. City of New York*, 71 A.D.3d 603, 603, 898 N.Y.S.2d 27 (1st Dep't 2010). "Substantial evidence" is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Applying this standard, the Court finds that the Hearing Officer's determination was supported by substantial evidence. Specifically, the Hearing Officer considered, among other evidence, that Plaintiff's name did not appear on the directory of the building, pictures that showed the apartment in vacant condition (i.e., vacant kitchen cabinets and counters, empty bedroom closets and drawers, etc.), the fact that the ConEd usage graphs showed minimal to no electricity and gas usage in 2011 and 2012, and that the address listed on Plaintiff's mother's death certificate was not the New Rochelle apartment. (*See* Hearing Officer's Written Determination, Defs.' Exhibit S, at HB000199-200.) Plaintiff offers explanations for much of the adverse evidence, including: (1) much of the apartment was empty because Plaintiff was packing to move into the one-bedroom apartment; (2) the ConEd electricity and gas bills are low because Plaintiff used "Blackout Buddies"[6] instead of using lights in the apartment and because ConEd overcharged her for gas in a previous term and therefore made deductions from current usage; (3) there was no food in the fridge because Plaintiff does not cook in her house and eats mostly raw food because she had gastric bypass surgery in 2011; (4) the address on her mother's death certificate is her brother's address and was documented by mistake; and (5) Defendants Lord and Pritchett only took pictures of areas that appeared vacant, and Plaintiff's photographs show that the apartment was furnished and lived in. (Affidavit of Dale P. Handy in Opposition to the Motion for Summary Judgment, ECF No. 43, at 2-3.)  The Hearing Officer, however, heard and rejected Plaintiff's explanations, and "such credibility determinations fall within the province of the Hearing Officer." *Cappiello*, 80 A.D.3d at 1140. (*See also* Hearing Transcript at 61, 64, 96.)

---

[6] A Blackout Buddy is an emergency LED flashlight provided by the American Red Cross that charges using minimal power from a wall socket. (Pl.'s Exhibit 4A.) Plaintiff claims to have used about six Blackout Buddies in each room of her apartment. (Defs.' Exhibit I at 69-70.)

 It is not for this Court to further question the Hearing Officer, so long as the evidence is such that "a reasonable mind might accept [it] as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Given the substantial proof of vacancy—especially the minimal electricity and gas usage and lack of food or personal effects—the Hearing Officer's determination is supported by substantial evidence. As a result, Plaintiff was afforded proper due process.

## II.       Fair Housing Act

        The Fair Housing Act ("FHA") makes it illegal to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). The FHA also makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of" the buyer or renter or any person associated with that buyer or renter. *Id*. § 3604(f)(1). Plaintiff does not allege any facts in the Complaint, nor are any discovered throughout the record, that any action was taken by Defendants because of Plaintiff's race, religion, sex, familial status, or national origin. Plaintiff's sole FHA claim, therefore, relates to her disability. To establish discrimination under the FHA, plaintiffs have three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation. *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48 (2d Cir.), *cert. denied*, 537 U.S. 813 (2002). Plaintiff's Complaint appears to assert a claims for intentional discrimination and failure to accommodate. (*See generally* Complaint, ECF No. 2.) Each claim will be addressed in turn.[7]

---

[7] Disparate impact analysis focuses on facially neutral policies or practices that may have a discriminatory effect. Plaintiff has not alleged that any Section 8 policy or practice had a discriminatory effect.

A.  *Intentional Discrimination*

Claims of housing discrimination are evaluated under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003). Accordingly, once a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to assert a legitimate, nondiscriminatory rationale for the challenged decision. *Id.* at 802–03. A plaintiff may establish a prima facie case by showing (1) that she is a member of a protected class; (2) that she sought and was qualified to rent or purchase the housing; (3) that she was rejected; and (4) that the housing opportunity remained available to other renters or purchasers. *See Robinson v. 12 Lofts Realty, Inc.,* 610 F.2d 1032, 1038 (2d Cir. 1979). "[O]nce a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to assert a legitimate, nondiscriminatory rationale for the challenged decision." *Mitchell*, 350 F.3d at 47. If the defendant makes such a showing, the burden shifts back to the plaintiff to demonstrate that discrimination was the real reason for the defendant's action. *See Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000).

Defendants contend that Plaintiff cannot establish a prima facie case of discrimination because (1) Section 8 was unaware of her disability and therefore could not discriminate against her based on such, and (2) Plaintiff was not qualified to rent the apartment as she was not living in the unit in violation of 24 CFR § 982.551(h). (Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, ECF No. 34, at 8-9.) However, Plaintiff indicated on her yearly recertification of benefits that she had a disability, and therefore, Defendants were aware of—or reasonably should have been aware of—her disability. (*See* Housing Assistance Payment Contract Amendment Notice, Attachment to ECF No. 43, at HB000095-98.) In addition, the fact that Plaintiff violated the housing rules does not affect her

initial qualifications for Section 8 benefits. Therefore, Defendants' assertions do not affect Plaintiff's ability to state a prima facie case that she (1) has a disability; (2) sought to maintain her living situation; (3) was terminated from Section 8 benefits; and (4) Section 8 benefits remained available to other qualified renters. As a result, the burden shifts to the Defendants to assert a legitimate, non-discriminatory rationale for revoking Plaintiff's benefits.

Defendants contend that they had a non-discriminatory reason for terminating Plaintiff's benefits in that she violated 24 CFR § 982.551(h) and the terms of her contract with PHA, which require Plaintiff to promptly notify the PHA when the family is away from the unit for an extended period of time and to notify the PHA if any family member no longer resides in the unit. (*See* 24 CFR § 982.551(h); Defs.' Exhibits B-D.) This Court already found that the Hearing Officer's factual finding that Plaintiff did not live in the apartment is entitled to deference as it is supported by substantial evidence. *See Clark v. Alexander,* 85 F.3d 146, 152 (4th Cir. 1996) (a hearing officer's factfinding will not be disturbed where supported by substantial evidence). *See also Rivera v. Town of Huntington Hous. Auth*., No. 12-CV-901 DRH ARL, 2012 WL 1933767, at *6 (E.D.N.Y. May 29, 2012) (citing *Clark,* 85 F.3d at 151-52) ("The level of deference shown to the factfindings of a hearing officer is not absolute but it is significant. The regulations governing hearings state that factual findings must be based on a preponderance of the evidence presented at the hearing. Accordingly, to insure compliance with federal law, the reviewing court must be satisfied that the hearing officer's conclusions are supported by substantial evidence."). As a result, Plaintiff violated the regulations and terms governing her Section 8 benefits, and Defendants have established a legitimate, non-discriminatory reason for terminating her benefits.

In any event, if the burden were to shift back to Plaintiff to demonstrate that discrimination was the real reason for the Section 8 termination, she would be unable to do so.

Plaintiff has not presented any evidence from which this Court could conclude that her disability was the true reason for the revocation of her benefits. Accordingly, Plaintiff's FHA discrimination claim fails.

### B. Reasonable Accommodation

Under the FHA, discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped individual] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). "To state a prima facie case for discrimination based on a failure to reasonably accommodate, a plaintiff must demonstrate that: (1) he suffers from a handicap as defined by the FHA; (2) the defendant knew or reasonably should have known of the plaintiff's handicap [or disability]; (3) accommodation of the handicap [or disability] may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 256 (S.D.N.Y. 2014) (internal alterations, citations, and quotation marks omitted). In order to "prevail on a reasonable accommodation claim, [a] plaintiff[] must first provide the governmental entity an opportunity to accommodate [her] through the entity's established procedures used to adjust the neutral policy in question." *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 578 (2d Cir. 2003), *superseded on other grounds by Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581 (2d Cir. 2016). "A governmental entity must know what a plaintiff seeks prior to incurring liability for failing to affirmatively grant a reasonable accommodation." *Id.* at 579.

In the instant case, Plaintiff has not presented any evidence that she requested any accommodation of her disability. Although it is true that Defendants were aware or should have been aware of her disability, at no point did Defendants refuse to afford Plaintiff an

accommodation. Plaintiff alleges in her complaint, "[Defendants' refuse to make reasonable accommodation to a one bedroom apartment for me." (Complaint, ECF No. 2, at 5.) However, Plaintiff does not assert that she requested a one-bedroom apartment to somehow accommodate her mental disability. Accordingly, Plaintiff did not request an accommodation of her disability, and Plaintiff's reasonable accommodation claim fails.

### III.    Fourth Amendment

Plaintiff's final claim alleges that Defendants violated her Fourth Amendment right to be free from unreasonable searches and seizures. Administrative searches by state agency officers constitute significant intrusions upon interests protected by Fourth Amendment, and such searches are subject to the procedural and substantive safeguards that the Fourth Amendment guarantees to individuals. *Camara v. Mun. Court of City & Cty. of San Francisco*, 387 U.S. 523, 534 (1967). "It is by now well established that while a warrantless search of a home is generally unreasonable and therefore violates the Fourth Amendment, which proscribes unreasonable searches, an individual may consent to a search, thereby rendering it reasonable." *United States v. Garcia*, 56 F.3d 418, 422 (2d Cir. 1995) (internal citations and quotation marks omitted). In the instant case, it is clear that Plaintiff gave her consent to Defendants to search the apartment. When Defendant Pritchett accused Plaintiff of no longer living in the apartment, Plaintiff responded with, "I have nothing to hide… you can come to my house." (Defs.' Exhibit I at 41.) Moreover, Plaintiff met Defendants Pritchett and Lord at her apartment and let them in. (*Id.* at 45.) However, Plaintiff argues (1) her consent did not extend to searching her personal belongings, and (2) her consent was involuntary as she was "never made aware that [she] had any rights during [the] search." (Affidavit of Dale P. Handy in Opposition to the Motion for Summary Judgment, at 3.)

15

A.  *Scope*

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991) (internal citations omitted). "An analysis of objective reasonableness is governed by the 'totality of the circumstances' standard. If a court finds that, under the totality of the circumstances, it was objectively reasonable for the officer to believe that the scope of the suspect's consent permitted him to conduct the search that was undertaken, there is no Fourth Amendment violation." *United States v. Pena Ontiveros*, 547 F. Supp. 2d 323, 331–32 (S.D.N.Y. 2008), *aff'd sub nom. United States v. Rico Beltran*, 409 F. App'x 441 (2d Cir. 2011) (internal citations, alterations, and quotation marks omitted).

In general, the scope of a search is defined by its express object. *Florida v. Jimeno*, 500 U.S. at 251. Here, the terms and objective of Defendants' search were clear: Defendants intended to search Plaintiff's apartment for proof that she lived there. Plaintiff contends that when she agreed to allow Defendants Pritchett and Lord to enter her home, she believed it to be a routine inspection. (Affidavit of Dale P. Handy in Opposition to the Motion for Summary Judgment, at 3.)  However, this assertion is contradicted by the undisputed evidence. Specifically, when Plaintiff went to the Section 8 office, Defendant Pritchett informed Plaintiff that she did not believe Plaintiff lived at the apartment and that she wanted to come search the apartment for that express purpose, and the search followed this exchange. (Defs.' Exhibit I at 41.) Plaintiff was aware that the object of the search was to determine whether she was residing at the apartment, and she consented to such. As a result, it is objectively reasonable for Defendants to conclude that the general consent to search Plaintiff's apartment extended to searching containers and

16

places in the apartment that would bear evidence of residency. *See generally Florida v. Jimeno*,

500 U.S. at 252; *see also United States v. Rojas*, 906 F. Supp. 120, 130 (E.D.N.Y. 1995)

("Because [the suspect] did not limit his consent in any way, the officers were authorized to

search the apartment anywhere that might reasonably house evidence of [the object of the

search]."). A reasonable person may conclude that searching closets and drawers for clothes and

a refrigerator for food would contain evidence that a person lived in the apartment. Moreover,

once the search began, Plaintiff did not display any behavior that would indicate resistance to the

search. *See United States v. Paulino*, No. 12 CR 799 RA, 2013 WL 2237532, at *5 (S.D.N.Y.

May 21, 2013) (holding that a search of an apartment, including closets, was reasonable in light

of the fact that the suspect consented, was present during the search, and did not object). The

authorization to search in this case, therefore, extended beyond a routine inspection.

It is true that "[c]onsent to search an area is distinguishable from consent to search an

object or closed container located within that area," *Winfield v. Trottier*, 710 F.3d 49, 55 (2d Cir.

2013), and "[a] suspect may of course delimit as he chooses the scope of the search to which he

consents." *Florida v. Jimeno*, 500 U.S. at 252. However, if the suspect's consent "would

reasonably be understood to extend to a particular container, the Fourth Amendment provides no

grounds for requiring a more explicit authorization." *Id.* As this is the case here, the Fourth

Amendment does not require Plaintiff to have explicitly authorized the more thorough search,

and her consent extended to such.

### B.  *Voluntariness*

Finally, Plaintiff contends that her consent was not voluntary because she was "never

made aware that [she] had any rights during [the] search, including the right to object and to ask

them to leave [her] apartment." (Affidavit of Dale P. Handy in Opposition to the Motion for

17

Summary Judgment, at 3.) In order for a search on consent to be reasonable, the consent must be given voluntarily. *United States v. Ramirez*, 115 F.Supp.2d 401, 407 (S.D.N.Y. 2000) (citing *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Phillips v. Cnty. of Orange*, 894 F.Supp.2d 345, 370 (S.D.N.Y. 2012) (quoting *Schneckloth v. Bustamont*e, 412 U.S. 218, 227 (1973)). Consent is valid as long as it is not coerced, and "[t]herefore, knowledge of the right to refuse consent is not a requirement to a finding of voluntariness." *Id*. (citation omitted). Similarly, consent need not be knowing and intelligent; "[s]o long as the police do not coerce consent, a search conducted on the basis of consent is not an unreasonable search." *Garcia*, 56 F.3d at 422 (citing *Schneckloth*, 412 U.S. at 228).

Here, Plaintiff's consent was not coerced. Plaintiff consented to the search while at the Section 8 office, returned to her apartment, and let the Defendants inside. In the time between the office and her apartment, Plaintiff had time alone to consider her decision without the pressure of Defendants' presence. Moreover, although Plaintiff claims she did not know she had any rights during the search, her consent need not be premised on her knowledge of the right to refuse consent; it is enough that she freely consented and voluntarily exhibited her consent both verbally and through her actions. Finally, Plaintiff states that she was "fearful that if [she] didn't cooperate, it would be held against [her]." (Affidavit of Dale P. Handy in Opposition to the Motion for Summary Judgment, at 3.) However, Defendants did not engage in any action that would imply duress or coercion, and, accordingly, Plaintiff's alleged fear does not undermine the fact that her consent was given voluntarily. As a result, there is no question of material fact as to whether Plaintiff consented to the search of her apartment and whether her consent extended to

the areas that were searched. Plaintiff's Fourth Amendment claim therefore fails.

## CONCLUSION

Accordingly, Defendants' motion for summary judgment is GRANTED. The Clerk of the

Court is respectfully requested to terminate the motion at ECF No. 32 and enter judgment in

favor of Defendants.

Dated:     July 2 8, 2016                     SO ORDERED:
           White Plains, New York

                                              _____
                                              NELSON S. ROMÁN
                                              United States District Judge